**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | | |
|---|---|---|
| **MIRIAM E. WOODS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:08-cv-0816** |
| | ) | |
| **MORGAN ASSET MANAGEMENT, INC.,** | ) | **Judge Haynes** |
| **MORGAN KEEGAN & CO., INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————————— | ) | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO REMAND**

Defendants Morgan Asset Management, Inc., Morgan Keegan & Company, Inc.,

James C. Kelsoe, Jr., David H. Tannehill, Carter E. Anthony, Allen B. Morgan, Jr., Joseph C.

Weller, James Stillman R. McFadden, Archie W. Willis, III, Mary S. Stone, W. Randall Pittman,

J. Kenneth Alderman, J. Thompson Weller, Charles D. Maxwell, William Jeffries Mann, James

D. Witherington, R. Patrick Kruczek, Jack R. Blair, Albert C. Johnson, Michele F. Wood and

Brian B. Sullivan (collectively "Defendants") respectfully submit the following response in

opposition to Plaintiffs' motion to remand.

## INTRODUCTION

This action – which is identical in nearly every meaningful respect to thirteen

actions pending before the Honorable Samuel H. Mays, Jr., in the U.S. District Court for the

Western District of Tennessee – stems from a substantial decline in value of certain Morgan

Keegan investment funds that has coincided with the ongoing global financial crisis.[1]   The

---

[1]   Ten putative class actions are pending before Judge Mays.  The cases all relate to three open-end and four
closed-end investment funds.  The lawsuits claim that Defendants violated §§ 11, 12(a)(2) and 15 of the Securities
Act of 1933 ("1933 Act"), § 34(b) of the Investment Company Act of 1940 and other federal securities laws.  <u>See</u>

actions pending in the Western District even include a putative securities class action **brought by the very same counsel** representing Plaintiffs in the instant case.[2]  In light of the multiple cases already pending in the Western District, which all involve the very same factual allegations, the same investment funds and the same alleged violations of federal rules and regulations, it is telling that Plaintiffs have made the calculated decision to file this action originally in the Circuit Court for Davidson County.

Recognizing that the putative class actions pending in the Western District all involve the same investment funds, share the same facts, raise similar legal claims and name substantially the same defendants, Judge Mays consolidated these actions into two separate matters.  See Atkinson, 2:07-cv-2784 (W.D. Tenn.), Docket No. 154 (attached as Exhibit 2).  In addition to consolidation, Judge Mays' order made clear that it would apply "automatically to all other substantively related actions arising out of or related to the same facts as alleged, or involving claims similar to those alleged, in the captioned actions, which have been filed, may be filed, **or are transferred to this Court**" (emphasis added).  The instant case is just such an action.  Moreover, there is no dispute that Plaintiffs are all putative class members in the consolidated cases pending before Judge Mays in Memphis.

---

Atkinson v. Morgan Asset Mgmt., Inc., No. 07-cv-2784; Willis v. Morgan Keegan & Co., Inc., No. 07-cv-2830; Hartman v. Morgan Keegan & Co., Inc., No. 08-cv-2071; Gregory v. Morgan Keegan & Co., Inc., 08-cv-2078; DeJoseph v. Morgan Keegan & Co., Inc., No. 08-cv-2212; and Daniels v. Morgan Keegan & Co., Nos. 08-cv-2452, 08-cv-2453, 08-cv-2454, 08-cv-2455 and 08-cv-2456.  In addition to the class actions, two derivative actions that parrot the same factual allegations and legal theories are pending before Judge Mays.  See Ryan v. Morgan Asset Mgmt., Inc., No. 08-cv-2162; Landers v. Morgan Asset Mgmt., Inc., No. 08-cv-2260.  The derivative complaints essentially allege that defendants violated the cited federal securities laws by, among other things, making false statements in and omitting material information from registration statements and prospectuses relating to the various investment funds.  Landers was removed to federal court from the Shelby County Chancery Court.  The Landers plaintiffs have filed a motion to remand that action to state court.  Excepting only a handful of paragraphs, the "Argument" section in Plaintiffs' remand brief in this case is a carbon copy of the remand brief filed in the Landers action.  The Landers remand motion is currently pending before Judge Mays.

[2]       See Gregory v. Morgan Keegan & Co., Inc., 08-cv-2078 (W.D. Tenn.), attached as Exhibit 1.

Notwithstanding Plaintiffs' not-so-thinly veiled efforts to avoid litigating this case in federal court – either here or in the Western District – it is clear that the claims asserted in this case fall squarely within this Court's jurisdiction.  On the face of the Complaint, Plaintiffs base their claims on alleged violations of federal law and SEC rules and regulations.  (See Compl. at ¶¶ 53, 54.)  These alleged violations of federal law alone are sufficient to trigger this Court's jurisdiction.   In addition, however, the Complaint is packed with allegations related to "illiquidity," (see Compl. at ¶¶ 51, 54, 56, 60, 64, 134), "overconcentration,"  (see Compl. at ¶¶ 51, 60, 63), and improper valuation, (see Compl. at ¶¶ 51-54, 60, 65, 134).  While Plaintiffs' Complaint carefully avoids citing to particular provisions of federal law in the foregoing paragraphs, there can be no serious argument that these claims are premised almost entirely on alleged violations of federal rules and regulation governing investment fund liquidity, valuation and asset concentration.

Simply stated, because any court that decides this case will be required to resolve substantial questions about the federal laws and regulations that Plaintiffs have put at issue here – *questions that Judge Mays will be required to resolve as well* – federal jurisdiction in this Court is proper, and Plaintiffs' motion to remand must be denied.  Any other result will simply reward Plaintiffs' blatant and improper attempt at forum shopping.

## RELEVANT BACKGROUND

This suit alleges violations of federal and state law relating to the management of the following investment funds:  the RMK High Income Fund, Inc.; RMK Advantage Income Fund, Inc.; RMK Strategic Income Fund, Inc.; RMK Multi-Sector High Income Fund, Inc.; and Morgan Keegan Select Fund, Inc. (collectively, the "Funds").  (See Compl. at ¶¶ 45-47.)  It is undisputed that all of the Funds are registered investment companies within the meaning of the

Investment Company Act of 1940, 15 U.S.C. §§ 80a-1 et seq. (the "ICA"), and are extensively regulated by federal law and SEC regulations.  After the Funds declined in value during the well-documented crisis in the global financial markets, Plaintiffs filed suit in Davidson County Circuit Court, alleging that the Funds "were marketed to the public through false and misleading communications that failed to disclose the true risks in the Funds.  Defendants violated state ***and federal law*** in connection with the sale of the funds and otherwise violated legal duties owed to plaintiffs."  (Compl. at  ¶ 2 (emphasis added).)

Plaintiffs' allegations in this case mirror the allegations in Gregory, a putative class action filed by Plaintiffs' counsel in Memphis federal court that alleges numerous violations of federal securities law.  See Exhibit 1.  In Gregory, the plaintiffs allege violations of the Securities Act of 1933 arising from the defendants' failure to reasonably value the funds' assets, (Gregory Compl. at ¶¶ 42, 44, 45, 47, 51, 55), the illiquidity of the funds, (Gregory Compl. at ¶¶ 42, 45, 47, 51), and the over-concentration of the funds, (Gregory Compl. at ¶¶ 48, 54).  Indeed, many of the core allegations in this lawsuit appear to have been lifted virtually verbatim from Gregory.  (Compare Compl. at ¶ 49 with Gregory Compl. at ¶ 40; Compl. at ¶¶ 51-63 with Gregory Compl. at ¶¶ 42-54; Compl. at ¶¶ 65-66 with Gregory Compl. at 55-56.)

Based on Plaintiffs' extensive reliance on the federal securities laws, as well as their clear effort to use this case to pursue in state court the same allegations made in Gregory, Defendants timely removed this case on August 25, 2008, relying on 28 U.S.C. §§ 1441 and 1446 and supported by supplemental jurisdiction under 28 U.S.C. § 1367.  On September 15, 2008, Plaintiffs filed a motion to remand this case to the Davidson County Circuit Court.

<u>**ARGUMENT & AUTHORITY**</u>

It is well settled that a case falls within the jurisdiction of the federal courts when a "plaintiff's well-pleaded complaint raises an issue of federal law." <u>Robinson v. Michigan Consol. Gas Co., Inc.</u>, 918 F.2d 579, 584 (6th Cir. 1990).  Thus, while plaintiffs generally are free to choose the forum in which they will proceed, they can avoid federal jurisdiction only by "exclusive reliance on state law." <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).  That reliance, however, must be genuine and absolute.  <u>See</u> <u>Medina v. Ramsey Steel Co., Inc.</u>, 238 F.3d 674, 680 (5th Cir. 2001) (denying remand where it was clear on face of plaintiff's complaint that he was "not proceeding on the exclusive basis of federal law").  As the United States Supreme Court has repeatedly made clear, when "vindication of a right under state law necessarily turns on some construction of federal law," the claim arises under federal law for purposes of federal question jurisdiction.  <u>Franchise Tax Bd. v. Constr. Laborers Vacation Trust</u>, 463 U.S. 1, 6 (1983).

## I.    Plaintiffs' Complaint Presents a Federal Question and Vests This Court with Jurisdiction

### A.    Plaintiffs' claims do not exclusively rely on state law

Exclusive reliance on state law is required in order to avoid federal question jurisdiction.  <u>See</u> <u>Medina</u>, 238 F.3d at 680.  In clear recognition that they cannot satisfy this standard, Plaintiffs instead seek to downplay it by conceding that "[a]part from non-removable Securities Act claims, [their] complaint makes only brief reference to federal law."  (Pls.' Brief at 3.)  This is a very misleading understatement.

In fact, the clear language of Plaintiffs' Complaint alleges violations of a multitude of federal laws and regulations.  Indeed, Plaintiffs expressly state that Defendants violated federal law regarding the calculation of the Funds' net asset value (the price at which a

mutual fund share is sold to the public, or "NAV"), the valuation of the Funds' portfolio securities, and the concentration and liquidity of securities in the Funds' portfolios:

> ***Under federal law***, the fair value of securities as to which market quotations are not readily available must be determined in good faith by the board of directors or an investment company. ***Under SEC [U.S. Securities and Exchange Commission] rulings***, "fair value" must be based on what a fund could reasonably expect to obtain for the securities upon their "current sale."
>
> Prior to the third quarter of 2007, the Funds' reported valuations of their assets which improperly assumed that highly illiquid assets could be liquidated on a current basis at the values paid by the Funds and/or did not reasonably discount asset value based on illiquidity issues.  These actions were reckless, ***violated SEC directives,*** and were not disclosed to investors.

(Compl. at ¶¶ 53, 54 (emphasis added).)  Given that SEC rules and regulations are the equivalent of federal statutes, it is difficult to imagine a clearer or more direct declaration that one or more of Plaintiffs' claims arises under and is dependent upon federal law.  See Loschiavo v. City of Detroit, 33 F.3d 548, 551 (6th Cir. 1994) (explaining that "federal regulations have the force of law").  Moreover, these are ***precisely the same allegations*** that the Gregory plaintiffs used as a basis for jurisdiction and venue in the federal court in Memphis.  (See Gregory Compl. at ¶¶ 4-6, 44, 45.)

At bottom, Plaintiffs' Complaint repeats the same alleged misconduct and violations of federal law as Gregory, and partly repackages those allegations as state law claims, all while liberally appropriating the text of the Gregory complaint.  Having done so, Plaintiffs cannot legitimately take the position that there has been "exclusive reliance on state law" in this case, or that this case does not belong in federal court.[3]  See Medina, 238 F.3d at 680.

---

[3]       Importantly, removal is proper if a single claim implicates a significant federal issue.  In that instance, the federal court may resolve "all issues" raised in the lawsuit.  See 28 U.S.C. § 1441(c); see also 28 U.S.C. § 1367(c).  Thus, removal jurisdiction is appropriate if any claim turns upon a disputed and substantial federal question.  See id.; Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 387 (1998) (holding that § 1441(c) "explicitly provid[es]

**B.**     **Plaintiffs' Claims Require Resolution of Substantial Questions of Federal Law**

Even if the Court were to decide that Plaintiffs' explicit reliance on violations of SEC regulations as the basis of their claims was not sufficient to trigger federal jurisdiction, the other allegations and claims in the Complaint vest this Court with jurisdiction because these allegations and claims require resolution of substantial and disputed federal questions.

As Plaintiffs necessarily concede, federal jurisdiction is proper where adjudicating a particular claim "requires resolution of a substantial question of federal law." (Pls.' Brief at 5.) Indeed, it is well settled that, where a substantial question of federal law is presented, federal question jurisdiction is found even when a plaintiff casts her claims under state law. "Even though state law creates a party's cause of action, its case might still arise under the laws of the United States if a well-pleaded complaint establishes that its right to relief under state law requires resolution of a substantial question of federal law." City of Chicago v. International College of Surgeons, 522 U.S. 156, 164 (1997). Federal jurisdiction exists if "a right . . . created by the . . . laws of the United States is an element, and an essential one, of the plaintiff's cause of action." Id. (quoting Gully v. First Nat. Bank in Meridian, 299 U.S. 109, 112 (1936)).

Without question, "federal question jurisdiction will lie over state-law claims that implicate significant federal issues." Grable & Sons Metal Prods. Inc., v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (citing Hopkins v. Walker, 244 U.S. 486, 490-91 (1917)). As the Supreme Court explained in Grable:

> The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

discretionary removal jurisdiction over entire case where federal claim is accompanied by a 'separate and independent' state-law claim").

Id.; see also U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 391 (3d Cir. 2002) ("A state suit need not invoke a federal law in order to arise under it for removal purposes. It is sufficient that the merits of the litigation turn on a substantial federal issue that is an element, and an essential one, of the plaintiff's cause of action."); T.B. Harms Co. v. Eliscu, 339 F.2d 823, 827 (2d Cir. 1964) ("Even though the claim is created by state law, a case may 'arise under' a law of the United States if the complaint discloses a need for determining the meaning or application of such a law."); D'Alessio v. NYSE, Inc., 258 F.3d 93, 103 (2d Cir. 2001) (holding that matter arises under federal law where claims "cast as state law claims" will require court to "construe" federal securities law); Pruitt v. Honda of Am. Mfg., Inc., 2006 WL 889498, at *5 (M.D. Tenn. Mar. 28, 2006) ( "[F]ederal question jurisdiction will lie over state-law claims that implicate significant federal issues.").

A substantial federal question exists if the interpretation of a disputed federal statute is "so important that it sensibly belongs in federal court." Eastman v. Marine Mech. Corp., 438 F.3d 544, 552 (6th Cir. 2006); see also Capece v. Depository Trust & Clearing Corp., 2005 LEXIS 42039, *24 (S.D. Fla. Oct. 11, 2005) (explaining that "when resolution of [an] action required examination of the propriety of [a defendant's] actions, which could only be determined by reference to the federal laws and regulations establishing the scope of [defendant's] duties," federal jurisdiction was proper).

As the Sixth Circuit has recently explained, a substantial federal question exists whenever there is a disputed federal issue, and the exercise of jurisdiction will not disturb any congressionally approved balance of federal and state judicial responsibilities. Mikulski v. Centerior Energy Corp., 501 F.3d 555, 568 (6th Cir. 2007) (en banc). In order for a federal issue to be "disputed," Plaintiffs need only allege a violation of a federal statute, rule or regulation,

and that the alleged violation gives rise to their claim.  See Gobble v. Hellman, 2002 WL 34430286, at *9-11 (N.D. Ohio Mar. 26, 2002) (holding that because "several counts of [p]laintiff's breach of fiduciary duty claims depend upon whether [d]efendants violated their duties under the Federal Exchange Act and SEC rules and regulations . . . the resolution of [the] claims requires construction and adjudication of substantial questions of federal law, and [therefore federal] jurisdiction . . . is proper").

In short, Plaintiffs bring claims based on alleged violations of federal law.  Defendants dispute those allegations.  This dispute satisfies the standard for invoking federal jurisdiction.

### 1. The Alleged Violations of Federal Law Are Essential Elements of Plaintiffs' Claims

Despite the Complaint's admitted and repeated references to federal securities law, Plaintiffs now claim that "federal regulations play only a minor role in this case."  (Pls.' Brief at 13.)  This is clearly incorrect; in fact, the plain language of Plaintiffs' Complaint flatly contradicts this statement.  Vast sections of the Complaint allege that Defendants are liable for failing to manage the Funds in compliance with the applicable federal law and regulations.  (See, e.g., Compl. at ¶¶ 48-66.)  Specifically, the Complaint alleges that Defendants failed to comply with the federal rules and regulations that govern the concentration, valuation and liquidity of the Funds' underlying investments.  (See, e.g., Compl.  at ¶¶ 51, 54, 56, 60, 64, 134 (complaining of illiquidity)); Compl. at ¶¶ 51, 60, 63 (complaining of over-concentration); and Compl. ¶¶ 51-54, 60, 65, 134 (complaining of improper NAV calculation).)

These allegations necessarily will be evaluated against the requirements of the ICA and rules promulgated thereunder,[4] and the mere fact that Plaintiffs do not include explicit cites to the ICA and the related regulations does nothing to change that.  See, e.g., Gobble, 2002 WL 34430286, at *9-11 (holding that because "several counts of [p]laintiff's breach of fiduciary duty claims depend upon whether [d]efendants violated their duties under the Federal Exchange Act and SEC rules and regulations . . . the resolution of [the] claims require construction and adjudication of substantial questions of federal law").

> For example, in Count Six, Plaintiffs allege that
>
> Morgan Management breached its fiduciary duty to plaintiffs by failing to value the illiquid assets of the funds in good faith and with reasonable professional competence, by managing the assets of the funds in a manner inconsistent with the restrictions in the Funds' prospectuses, by obtaining excessive compensation by virtue of the overvaluation of the Funds' assets, and by failing to take steps to make certain that the Funds' SEC filings' [sic] fully and fairly disclosed all risks associated with the Funds.

(Compl. at ¶ 134.)  To prove this claim, Plaintiffs must first establish the illiquidity of the underlying securities held by the Funds.  The liquidity of securities is a subject governed by federal law, including, among other things, SEC rules.  See SEC Rule 144A, codified at 17 C.F.R. § 230.144A (governing sales of restricted and otherwise illiquid securities by investment companies and other institutional investors); see also Investment Company Act Rel. No. 18612 [1991-1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 84, 930, 1992 SEC LEXIS 1083 (Mar. 12, 1992); Investment Company Act Rel. No. 13380 [1982-1983 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 83,400, 1983 SEC LEXIS 1271 (July 11, 1983) (explaining that a liquid security

---

[4]     As numerous courts, including the Supreme Court, have made clear, the ICA is a "pervasive federal regulatory scheme."  United States v. v. NASD, Inc., 422 U.S. 694, 735 (1975); see also Herpich v. Wallace, 430 F.2d 792, 815-16 (5th Cir. 1970) (stating that the ICA is pervasive federal regulatory scheme "intended to deter mismanagement of investment companies for the protection of investment company security holders").

may become illiquid, and vice versa, depending on a variety of factors).  Similarly, to prove that

the Funds' net asset values were improperly calculated, Plaintiffs again must resort to federal

law.  See SEC Rule 270.2a-4, 17 C.F.R. § 270.2a-4 (method of calculating net asset value); SEC

Rule 270.22c-1, 17 C.F.R. § 270.22c-1 (pricing requirements of redeemable securities); see also

15 U.S.C. § 80a-2(41) (authorizing SEC to establish regulations for pricing of shares and

valuation of fund assets for open end investment companies).

      Plaintiffs also allege that the Funds were over-concentrated in mortgage-backed

securities.  (See, e.g., Compl. ¶ 60(h) ("The Funds were investing heavily in assets backed by

non-conforming mortgages that did not comply with FNMA and FHLMC standards and were

much riskier than conforming mortgages").)  As with liquidity and valuation, concentration

standards applicable to investment funds are controlled by and a function of federal law –

namely, § 13 of the ICA and SEC rules.  See 15 U.S.C. § 80a-8(b)(1)(E); Form N-1A, Item

4(b)(1), Instruction 4; Guidelines for the Preparation of Form N-8B-1, Item 4(d), Investment

Company Act Rel. No. 7,221, 37 Fed. Reg. 12,790 (defining "concentration" and noting the

corresponding disclosure obligations for a concentration policy).

      Plaintiffs' other claims similarly depend on proof that a violation of federal law

regarding liquidity, concentration, and valuation has occurred.  For example, in Count Four,

"Aiding and Abetting Fraud," Plaintiffs contend that "Defendants in Counts Four, Five, and Six

were aware the fact [sic] that the SEC filings made by the Funds contained material

misrepresentations and/or omissions."  (Compl. at ¶ 115.)  Similarly, in Count Five, "Aiding and

Abetting Fiduciary Breach," Plaintiffs allege that "Defendants in Counts Four, Five, and Six

were aware that Morgan Keegan was not fully and fairly disclosing the risks in the Funds to its

clients, including the Count Five Plaintiffs had accounts with Morgan Keegan and purchased shares in the Funds at the recommendation of Morgan Keegan." (Compl. at ¶ 122.)

The "material misrepresentations and/or omissions" and undisclosed risks alleged by Plaintiffs are almost entirely related to illiquidity, concentration, and valuation. (See Compl. at ¶¶ 60-66 ("Misrepresentations and Omissions in the Funds' SEC Filings") (complaining six times of liquidity-related concerns, seven times of concentration-related concerns, and six times of valuation-related concerns).) To prove a material misrepresentation in the Funds' SEC filings relating to illiquidity, concentration, and valuation, Plaintiffs must prove that over-concentration, illiquidity and improper valuation actually occurred. To do so, Plaintiffs will be required to rely on federal law.[5]

Recognizing this, Plaintiffs again attempt to minimize the role federal law has in their claims by describing it as merely "source[s] of public policy or standard[s] of conduct." (Pls.' Brief at 11 (citing Pruitt v. Honda of Am. Mfg., Inc., 2006 WL 889498, at *5 (M.D. Tenn. Mar. 28 2006)).) Rather than looking to federal rules and regulations merely to identify the *source* of a requirement with undisputed meaning, as in Pruitt, however, any court deciding this case will be required to *analyze* the ICA and SEC rules in order to evaluate Plaintiffs' claims. Stated differently, because Plaintiffs have premised several of their state law claims on alleged violations of federal law, regulations and SEC pronouncements relating to liquidity, valuation and concentration, Plaintiffs have inextricably intertwined those claims with the need for proof of a violation of the federal laws that govern investment companies and disclosures and made

---

[5]       Indeed, it is undisputed that nothing in Tennessee securities law or its common law imposes any standards whatsoever on Defendants with respect to the liquidity, valuation and concentration of the Funds' underlying investments. Given the important place liquidity, valuation and concentration have in Plaintiffs' ability to make out their claims, the absence of state regulation in this area is telling and tacitly confirms that federal law will play much more than "only a minor role in this case."

those alleged violations essential elements of their claims.  Having done so, Plaintiffs necessarily have invoked the jurisdiction of this Court, and their motion to remand should be denied.[6]  See Franchise Tax Bd., 463 U.S. at 6 (explaining that federal jurisdiction vests where "vindication of a right under state law necessarily turns on some construction of federal law"); see also D'Alessio v. NYSE, Inc., 258 F.3d 93, 101 (2d Cir. 2001) (finding that  where federal law acts as "gravamen" of plaintiff's state law claim, exercise of federal jurisdiction is appropriate).

> **2.      The Standards Governing Investment Companies, Funds and the Financial Markets Involve Substantial Federal Interests**

Plaintiffs spend considerable time trying to convince the Court that there is no substantial federal interest in the law governing investment companies, funds and the securities markets.  (Pls.' Brief at 10-15.)  To the contrary, case law is quite clear that laws governing the conduct and management of investment companies and the federal securities laws are an area of great federal interest.  When state law claims seek to measure conduct against the requirements of such laws, the resolution of disputed issues relating to those laws is a matter that falls squarely within the authority of this Court.  See D'Alessio, 258 F.3d at 100.  Indeed, "[c]laims that a federally regulated financial institution has violated its own rules are routinely held to invoke a substantial federal interest. . . ." Capece v. Depository Trust & Clearing Corp., 2005 WL 4050118, at *8 (S.D. Fla. Oct. 11, 2005) (citing Sparta Surgical Corp. v. NASD, Inc., 159 F.3d 1209, 1212 (9th Cir. 1998)).

Defendant Morgan Asset Management is a registered investment advisor and, as such, its conduct is governed by the federal Investment Advisors Act of 1940, 15 U.S.C. §§ 80b-

---

[6]      If Plaintiffs' argument were accepted, no federal issue, regardless of substance, would ever be sufficient to invoke federal question jurisdiction so long as it was theoretically possible to resolve the case on other, non-federal grounds.  As explained above, nothing in the relevant case law supports such a myopic reading of the well-pleaded complaint rule.

1, et seq.  Similarly, the Funds that Defendants allegedly mismanaged are issued by a federally registered investment company whose conduct is governed by the ICA.

The "Investment Company Act is a comprehensive regulatory scheme to prevent abusive practices by those in control of investment companies." SEC v. Advantage Growth & Capital Corp., 470 F.2d 40, 42 (7th Cir. 1972); see also United States v. NASD, Inc., 422 U.S. at 735 (describing ICA as a "pervasive regulatory scheme"); Herpich v. Wallace, 430 F.2d 792, 815-16 (5th Cir. 1970) (explaining that "[t]he history and whole pattern of the Investment Company Act convince us that Congress by this statute intended to deter mismanagement of investment companies for the protection of investment company security holders. . . .").  In keeping with the intent underlying this comprehensive regulatory scheme, the ICA governs the nature, types and content of the disclosures that open-end investment funds, like the ones at issue in this case, are required to make.  See 15 U.S.C. § 80a-8b(1)-(5).

Furthermore, it is clear that the regulation of the markets for investment funds is an area of substantial federal interest.  According to the Investment Company Institute's official survey of the mutual fund industry, as of August 2007, the combined assets of the nation's investment funds totaled some $1.5 *trillion*.  See http://www.ici.org/stats/mf/trends_08_07.html. The scale and scope of this industry and the broader securities markets, and their collective importance to the national economy, has led the federal government to spearhead the regulatory oversight of these markets since the 1930s.  This conclusion is confirmed by recent events stemming from the crisis engulfing the global financial markets.[7]

---

[7]     Perhaps the best evidence of this substantial federal interest, however, can be found in the events of the past several weeks.  On September 24, 2008, President George W. Bush addressed the nation in the wake of "triple-digit swings in the stock market."  The President unequivocally acknowledged that "[w]e're in the midst of a serious financial crisis, and the federal government is responding with decisive action."  See President's Address to the Nation (Sept. 24, 2008) (text attached as Exhibit 3).  The President urged support for an unprecedented $700 billion rescue plan created "[i]n close consultation with Treasury Secretary Hank Paulson, Federal Reserve Chairman Ben

Accordingly, where, as here, Plaintiffs have alleged violations of that regulatory scheme, there can be no valid basis for arguing that those interests are not sufficiently "substantial" to invoke the jurisdiction of this Court.

### 3. Federal Jurisdiction Will Not Disturb the Balance of Federal and State Judicial Responsibilities

The foregoing conclusions are all the more compelling in light of the fact that the U.S. District Court in Memphis will be called upon to address *identical* facts and legal issues in resolving the consolidated federal securities class action now pending there. As discussed above, the substantive allegations in this case essentially mirror the allegations and claims made in the Gregory case, which involves the same Plaintiffs, the same Plaintiffs' counsel and the same Defendants. (See n.2, supra.)

Indeed, there is no legitimate basis to conclude that retention of this case in federal court will disrupt the "sound division of labor between state and federal courts." Eastman, 438 F.3d at 553. To the contrary, retention of this case is the only practical way to ensure uniformity of decision on the issues relating to the Funds and the numerous other cases already pending in the Western District of Tennessee. See Grable & Sons Metal Prods. Inc., v.

---

Bernanke, and SEC Chairman Chris Cox" for financial institutions that have been battered by underperforming mortgage-related assets. Id. This plan "comes on top of the $85 billion government rescue of insurance giant American International Group and a plan to spend up to $200 billion to shore up the mortgage financial giants Fannie Mae and Freddie Mac." See David Herszenhorn, *Administration is Seeking $700 Billion for Wall Street*, N.Y. TIMES, Sept. 20, 2008, attached as Exhibit 4. By September 29, 2008, after significant negotiations with Congress, "the measure had grown to 110 pages, many of them devoted to the creation of myriad oversight agencies, including an independent inspector general." See Lori Montgomery and Paul Kane, *Sweeping Bailout Bill Unveiled; COMPROMISE: Lawmakers Work to Secure Support*, WASH. POST, Sept. 29, 2008, attached as Exhibit 5. To say that the decision by federal regulators and the Congress to commit nearly $1 trillion in taxpayer funds in the span of a month to stabilize the nation's financial markets demonstrates a substantial federal interest in the effective administration of those markets would be a considerable understatement. Rather, these sweeping actions confirm that the regulation of the financial markets generally, and investment companies specifically, is an area of paramount federal concern.

Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005) (explaining need for "uniformity that a federal forum offers").

 Moreover, any other result would run afoul of the fundamental and well-settled intent of the federal securities laws. See Mayo v. Dean Witter Reynolds, Inc., 258 F. Supp. 2d 1097, 1110-11 (N.D. Cal. 2003) ("The comprehensive system of federal regulation of the securities industry is designed to provide uniform, national rules for participants in the securities markets."); see also Capece, 2005 WL 4050118 at *6 ("Since 1934, Congress has called for uniform regulation of the national securities markets."). Indeed, this potential for inconsistent rulings on two pending actions brought by essentially the same Plaintiffs as in Gregory, and related to the same alleged misconduct, is sufficient justification for this Court to retain jurisdiction. See Ormet Corp. v. Ohio Power Co., 98 F.3d 799, 807 (4th Cir. 1996) ("Where the resolution of a federal issue in a state-law cause of action could, because of different approaches and inconsistency, undermine the stability and efficiency of a federal statutory regime, the need for uniformity becomes a substantial federal interest, justifying the exercise of jurisdiction by federal courts.").

 In making their argument for remand, however, Plaintiffs heavily rely on the Sixth Circuit's decision in Eastman v. Marine Mech. Corp., 438 F.3d 544 (6th Cir. 2006). According to Plaintiffs, this case and others establish that "[b]ecause plaintiffs' claims do not raise a disputed federal issue, no substantial federal question exists." (Pls.' Brief at 10.) Nothing in Eastman undermines this Court's authority to exercise subject matter jurisdiction in this case.

 In Eastman, the plaintiff's complaint alleged that he was fired in violation of public policy and cited to several federal statutes. See id. at 548. The defendant removed the case, and the plaintiff sought remand. After noting that "a substantial federal question involves

the *interpretation* of a federal statute that is actually in dispute in the litigation," the Sixth Circuit held that no substantial federal question was present.  Id. (emphasis added).  The Sixth Circuit based its decision on the fact that the parties did not disagree about the interpretation of the statutes that were cited by the plaintiff in his complaint.  Id. at 552.  Further, the Sixth Circuit was concerned that widening federal jurisdiction to suits that simply reference a federal statute would disrupt the "sound division of labor between state and federal court."  Id. at 553.

        Contrary to Plaintiffs' assertions, however, the instant case presents an entirely different scenario.  Specifically, in this case, the parties hotly dispute how the relevant federal statutes should be interpreted.  Although Plaintiffs state that "[i]t is undisputed that the Funds were obliged to comply with federal asset valuation rules and regulations," such statements miss the point entirely.  Id.  While Defendants do not dispute that the Funds at issue here – and indeed any registered investment company – are required to comply with applicable law, they strongly dispute that they violated the ICA provisions and SEC regulations that govern the management of those Funds.  (See Section I.B.1, supra.)  Resolving which interpretation of federal law is correct will be a necessary prerequisite to deciding whether Plaintiffs' state law claims have any merit.  As the applicable authority makes clear, it is the need for that resolution that makes this case appropriate for federal jurisdiction.  See Sparta Surgical Corp. v. NASD, Inc., 159 F.3d 1209, 1212 (9th Cir. 1998) (affirming removal because state law claims related to delisting of securities offering were "necessarily based on an assumed violation of the [SEC] rules governing such procedures"); see also D'Alessio, 258 F.3d at 103-04; Wietschner v. Gilmartin, 2003 LEXIS 18997, at *7-9 (D.N.J. Jan. 13, 2003) (retaining jurisdiction over state law breach of fiduciary duty claims because they were based on alleged violations of federal securities law).

This case clearly presents substantial questions of federal law that "sensibly belong in federal court" and make the exercise of federal question jurisdiction by this Court both necessary and appropriate.  <u>Eastman</u>, 438 F.3d at 552.  Nothing in either <u>Eastman</u> or the other decisions cited by Plaintiffs holds otherwise.  As the Second Circuit has noted, federal securities laws are an "area[] of undisputed federal interest" and, therefore, make resolution of disputed issues relating to those laws a matter that is squarely within the authority of this Court.  <u>See</u> <u>D'Alessio</u>, 258 F.3d at 100.[8]

## II.   Federal Courts Consistently Affirm Federal Question Jurisdiction In Cases With Similar Circumstances

Plaintiffs' attempt to avoid federal jurisdiction by minimizing their obvious reliance on federal law is not novel.  In circumstances like those presented here, however, federal courts consistently hold that federal jurisdiction is proper.

On this issue, the Second Circuit's decision in <u>D'Alessio</u> is highly instructive.  There, the complaint's four causes of action were brought under New York common law.  Nonetheless, the court concluded that the true thrust of the complaint was that the defendant "failed to perform its statutory duty, created under federal law. . . ."  <u>Id.</u> at 101.  Thus, the case was one where "the vindication of a right under state law necessarily turns on some construction of federal law."  <u>Id.</u> at 99 (quoting <u>Franchise Tax Bd.</u>, 463 U.S. at 9).  The Second Circuit held that a substantial federal question was presented, because "resolution of [plaintiff's] claims

---

[8]     Plaintiffs also complain that exercising federal jurisdiction in the absence of an express private right of action would threaten the balance of federal and state judicial responsibilities.  (Pls.' Brief at 14-15.)  It is well settled that the absence of a private right of action under a federal statute is not in any way dispositive of federal jurisdiction.  <u>See</u> <u>Eastman</u>, 438 F.3d at 552 ("<u>Merrell Dow</u> should be read in its entirety as ***treating the absence of a federal private right of action as evidence relevant to, but not dispositive of***, the 'sensitive judgments about congressional intent' that § 1331 requires.") (emphasis added); <u>West 14th Street Commercial Corp.</u>, 815 F.2d at 196 (exercise of federal jurisdiction appropriate even "***assuming that plaintiffs have no private right of action*** under [federal law].") (emphasis added).  Nothing about this case, therefore, risks upsetting the balance of federalism.

requires a court to construe federal securities laws and evaluate the scope of the [defendant's] duties." Id. at 101-02. Like D'Alessio, the instant case presents a substantial federal question because, as established by Plaintiffs' own allegations, Defendants' alleged legal duties are defined by federal statute, regulations and/or rules. (See Section I.B.1, supra.)

The decision in West 14th Street Commercial Corp. v. 5 West 14th Owners Corp., 815 F.2d 188 (2d Cir. 1987), provides similar guidance. In that case, the plaintiffs sought a declaratory judgment in federal court that the defendants' termination of their contracts was not authorized by the federal Condominium Relief Act. Id. at 193. The defendant challenged the federal court's jurisdiction, characterizing the suit as a state law breach of contract action. Id. at 194. The Second Circuit held there was federal jurisdiction over the plaintiffs' suit, explaining that "the federal issue [was] decisive because upon that Act's construction the vindication of rights and definition of relationships *created by federal law* depends." Id. at 196 (emphasis added). According to the Second Circuit, this was true even "*assuming that plaintiffs have no private right of action* under [the Act]." Id. (emphasis added).

Finally, Gobble v. Hellman, 2002 WL 34430286 (N.D. Ohio Mar. 26, 2002) also is highly instructive, if not dispositive. The plaintiff in Gobble framed all nine counts of his complaint as state law claims for breach of fiduciary duty, waste of corporate assets and abuse of control. Relying on much of the authority cited above, the district court found that federal jurisdiction was proper because, in asserting at least two of his claims, the plaintiff alleged that the defendants had failed to abide by applicable SEC rules and regulations. Deciding whether violations of those rules and regulations had occurred was "a question of federal law." Id. at *3. The court therefore declined to remand the case to state court. Id. ("[S]everal counts of [p]laintiff's breach of fiduciary duty claims depend upon whether [d]efendants violated their

19

duties under the Federal Exchange Act and SEC rules and regulations . . . the resolution of [the] claims requires construction and adjudication of substantial questions of federal law, and [therefore federal] jurisdiction . . . is proper").[9]

As these and other federal decisions make clear, where, as here, federal law gives rise to and governs the parties' relationship, there can be no legitimate dispute that federal question jurisdiction is present. Plaintiffs' motion to remand, therefore, should be denied.

## CONCLUSION

In this case, Plaintiffs ask the state court to impose sweeping liability on Defendants. As the basis for this request, the instant Complaint relies on the same allegations that were brought in Gregory, and Plaintiffs have expressly asserted in this case that Defendants violated federal law and SEC rules and regulations. (Compl. at ¶¶ 53, 54.) Having alleged violations of federal law, Plaintiffs have invoked the jurisdiction of this Court, and the Court should reject any claim otherwise as patently inconsistent with both Plaintiffs' own allegations and controlling federal case law.

Likewise, given Gregory and the other related federal cases already pending in Memphis, it is clear that the instant case is nothing more than an attempt to gain an unfair advantage by litigating substantially similar claims outside of that federal court's supervision. Merely pasting a state court caption on an existing federal securities complaint, however, does

---

[9]   Recognizing the obvious similarity in this case and Gobble, Plaintiffs attempt to distinguish the latter decision by asserting that their claims do not depend on violations of federal rules and regulations. This assertion simply does not square with the plain language of the Complaint. (See Compl. at ¶¶ 51-54, 56, 60, 63-65, 134.) Knowing this, Plaintiffs also try to avoid Gobble by arguing that they "may prevail on all counts even if the jury finds no violation of a federal rule." (Pls.' Brief at 14, n.1.) In making this argument, however, Plaintiffs do nothing to explain how that will or could be so. Nor can they, as nothing in the Complaint remotely suggests that Plaintiffs refer to federal law merely for support or as some alternative basis for their claims. Rather, as the plain language of the Complaint makes clear, the alleged federal law violations serve as an essential element to Plaintiffs' claims. Under Gobble, federal jurisdiction is proper in such circumstances.

not entitle Plaintiffs to evade the jurisdiction of the federal courts.  This Court should not shy from retaining jurisdiction here in order to prevent Plaintiffs' obvious attempt at improper forum shopping.  See n.1, supra.

        For all the foregoing reasons, therefore, Plaintiffs' motion to remand should be denied.

        **DATED** this 14th day of October, 2008.

        Respectfully submitted,

        **BASS, BERRY & SIMS PLC**

By: /s/  W. Brantley Phillips, Jr.
    Matthew M. Curley  (18613)
    W. Brantley Phillips, Jr.  (18844)
    315 Deaderick Street, Suite 2700
    Nashville, TN 37238
    (615)742-6200

    *Attorneys for Morgan Asset Management, Inc., Morgan Keegan & Company, Inc., Allen B. Morgan, Jr., J. Kenneth Alderman, Brian B. Sullivan, Joseph C. Weller, J. Thompson Weller, Charles D. Maxwell, Michele F. Wood, James C. Kelsoe, Jr., David H. Tannehill, Carter E. Anthony and R. Patrick Kruczek*

        **SHERRARD & ROE, PLC**

By: /s/  L. Webb Campbell II
    L. Webb Campbell II (11238)
    John L. Farringer (22783)
    424 Church Street, Suite 2000
    Nashville, TN 37219
    Phone: (615) 742-4200

K&L GATES LLP
Jeffrey B. Maletta, Esq.
Nicole A. Baker, Esq.
1601 K Street NW
Washington, DC 20006

*Attorneys for Jack R.. Blair, Albert C. Johnson, James Stillman R.. McFadden, W. Randall Pittman, Mary S. Stone, and Archie W. Willis, III, William Jeffries Mann, James D. Witherington*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14th, 2008, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

Harold Naill Falls, Jr.
FALLS & VEACH
1143 Sewanee Road
Nashville, TN  37220

/s/  W. Brantley Phillips, Jr.

22